UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ALPHA THIRTEEN, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>GEICO CASUALTY COMPANY,<br>PROGRESSIVE PREFERRED INSURANCE<br>COMPANY, and AMBERLY MONTANEZ,<br><br>    Defendants. | **MEMORANDUM DECISION AND<br>ORDER GRANTING [35] DEFENDANT<br>PROGRESSIVE PREFERRED<br>INSURANCE COMPANY'S MOTION<br>TO DISMISS, [43] DEFENDANT GEICO<br>CASUALTY COMPANY'S MOTION TO<br>DISMISS, AND [44] DEFENDANT<br>AMBERLY MONTANEZ'S MOTION<br>FOR JUDGMENT ON THE PLEADINGS**<br><br>Case No. 2:25-cv-00488-DBB-DBP<br><br>District Judge David Barlow |

Before the court is Defendant Geico Casualty Company's ("GEICO") Motion to Dismiss and Defendant Progressive Preferred Insurance Company's ("Progressive") Motion to Dismiss Plaintiff Alpha Thirteen, LLC's ("Alpha") Amended Complaint, as well as Defendant Amberly Montanez's (collectively, "Defendants") Motion for Judgment on the Pleadings.[1] For the reasons stated below, the court grants Defendants' motions.[2]

## BACKGROUND

*Medicare and Medicare Advantage*

---

[1] Def. Progressive's Mot. to Dismiss ("Progressive Mot."), ECF No. 35, filed Dec. 9, 2025; Def. GEICO's Mot. to Dismiss ("GEICO Mot."), ECF No. 43, filed Dec. 30, 2025; Def. Amberly Montanez's Mot. for J. on the Pleadings ("Montanez Mot."), ECF No. 44, filed Jan. 5, 2026.

[2] Because Defendants' motions raise largely similar arguments for dismissal of all claims, the court addresses Defendants' arguments together unless otherwise indicated.

Medicare is a "federally funded health insurance program for the elderly and disabled."[3] Enacted by Congress in 1965, Medicare consists of five parts.[4] Parts A and B contain the "traditional" Medicare model in which the federal government reimburses medical providers directly for hospital and outpatient medical care.[5] Part C contains the Medicare Advantage program, which uses a different model and allows Medicare-eligible individuals to have a Medical Advantage Organization ("MAO") provide their Medicare benefits.[6] Part D provides prescription drug coverage, and Part E lists Medicare's definitions and exclusions, one of which is the Medicare Secondary Payer Act ("MSP Act").[7] Part E also contains a cause of action that is "expressly reserved for the United States" and a second "private cause of action" that is at issue in this case.[8]

Part C's "Medicare Advantage system is a public-private health insurance system that runs parallel to Medicare"[9] The first iteration of it—entitled "Medicare + Choice"—was enacted in 1997 to "allow beneficiaries to have access to a wide array of private health plan choices in addition to traditional fee-for-service Medicare," and to "enable the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options."[10] One type of "downstream actor" that operates in this system is an independent physician association ("IPA").[11] An "IPA is a group of independent physicians that contract with

---

[3] *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 506 (1994); 42 U.S.C. § 1395 *et seq.*
[4] *See Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66, 68 (2d Cir. 2022).
[5] 42 U.S.C. § 1395w-22(a)(1). *See Big Y Foods, Inc.*, 52 F.4th at 68; *MaxMed Healthcare, Inc. v. Price*, 860 F.3d 335, 337 (5th Cir. 2017).
[6] 42 U.S.C. § 1395w-22(a).
[7] *See Big Y Foods, Inc.*, 52 F.4th at 68.
[8] 42 U.S.C. § 1395y(b)(3)(A).
[9] *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1308 (11th Cir. 2020).
[10] H.R. Rep. No. 105-217, at 585 (1997) (Conf. Rep.).
[11] *ACE Am. Ins. Co.*, 974 F.3d at 1309.

one or more insurers to provide medical care for a population of insureds."[12] An IPA "serves as an intermediary between an MAO and medical service providers."[13] They are designed to "negotiate with health insurance carriers and other health care payor organizations to establish arrangements for their member physicians to be considered preferred providers by the payors."[14] "To operate more nimbly and to better compete with Medicare, some MAOs contract with smaller organizations, like independent physician associations, that have closer connections to local healthcare providers."[15]

So long as MAOs provide the same benefits to beneficiaries they would receive under traditional Medicare,[16] the federal government "pays MAOs a fixed, per capita payment and leaves it to the MAOs to pay their insureds' expenses as they arise."[17] This arrangement gives MAOs flexibility but also exposes them to the risk that their expenditures will exceed their revenues because their payment from the government is fixed.[18] MAOs pay claims from their assets rather than the Trust Fund.[19]

<em>Secondary-payer Status</em>

Medicare was initially the primary payer for medical services, even if Medicare beneficiaries also had private insurance.[20] In 1980, however, Congress "inverted that system"

---

[12] "Accountable Care Organizations & the Medicare Shared Savings Program," Cong. Res. Serv. (May 26, 2011) at 7 n.33, https://www.congress.gov/crs-product/R41474 [https://perma.cc/AS3Q-EYGC].
[13] *ACE Am. Ins. Co.*, 974 F.3d at 1310.
[14] *Pfenninger v. Exempla, Inc.*, 116 F. Supp. 2d 1184, 1187–88 (D. Colo. 2000).
[15] *ACE Am. Ins. Co.*, 974 F.3d at 1308.
[16] *See* 42 U.S.C. § 1395w-22(a).
[17] *Humana Med. Plan*, *Inc. v. W. Heritage Ins. Co.*, 880 F.3d 1229, 1291 (11th Cir. 2018) [hereinafter *Humana II*] (denying rehearing en banc) (Tjoflat, J., dissenting).
[18] *See id.* at 1292.
[19] *Id.*
[20] *See Bio-Med. Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 278 (6th Cir. 2011).

when it enacted the MSP Act, which made Medicare the secondary payer in an attempt to control Medicare's rising costs.[21] Two years later, Congress further amended the Medicare statute by creating a "private cause of action" to recover double damages if a primary insurer "fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)."[22] Paragraph (1) of that provision regards primary healthcare coverage through an employer or other sponsor and is not at issue here. However, Paragraph (2)(A) is relevant because it prohibits Medicare from bearing the cost of services under the following conditions:

> (i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1), or

> (ii) payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.[23]

"These provisions protect Medicare from being required to pay for services for which a primary plan is responsible."[24] When a primary payer is "has not made or cannot reasonably be expected to make payment" for medical care, Subparagraph (B) authorizes Medicare to make conditional payments, subject to reimbursement.[25]

In 2003, Congress updated Medicare Advantage largely to address secondary payer issues.[26] 42 U.S.C. § 1395w-22(a)(4) establishes MAOs as secondary payors "under circumstances in which payment is made secondary pursuant to section 1395y(b)(2) of this

---

[21] *Id.*; 42 U.S.C. § 1395y(b)(2)(A)(ii). The MSP Act is located in Part E.

[22] 42 U.S.C. § 1395y(b)(3)(A).

[23] 42 U.S.C. § 1395y(b)(2)(A).

[24] *Big Y Foods, Inc.*, 52 F.4th at 69.

[25] *Id.* § 1395y(b)(2)(B).

[26] *See* Medicare Prescription Drug, Improvement, and Modernization Act, Pub. L. 108-173, 117 Stat. 2066 (Dec. 8, 2003).

title."[27] When an MAO makes a secondary insurance payment, the provision authorizes the MAO to charge either the primary payer or the insured "to the extent that the individual has been paid" by the primary payer.[28] The provision does not, however, require an MAO to seek reimbursement, create a private right of action, or allow double-damages recovery.[29]

As mentioned earlier, there are two causes of action in Part E "to increase the chance of receiving reimbursement."[30] The first, located in Paragraph (2)(B), allows the federal government to recover from a primary plan.[31] "When Medicare makes a conditional payment on behalf of a beneficiary, the primary plan must reimburse the Trust Fund."[32] The government may recover double damages from a responsible entity that has refused to reimburse the Trust Fund.[33]

The second cause of action, located in Paragraph (3)(A), provides a private cause of action:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).[34]

"The Medicare Statute thus creates two separate causes of action allowing for recovery of double damages where a primary payer fails to cover the costs of medical treatment."[35] This case hinges on who may bring suit under the private cause of action provision—Section 1395y(b)(3)(A).

---

[27] 42 U.S.C. § 1395w-22(a)(4).
[28] *Id.*
[29] *See id.*
[30] *Big Y Foods, Inc.*, 52 F.4th at 69.
[31] 42 U.S.C. § 1395y(b)(2)(B).
[32] *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1152 (9th Cir. 2013) (quoting 42 U.S.C. § 1395y(b)(2)(B)(ii)).
[33] *See id.* (quoting 42 U.S.C. § 1395y(b)(2)(B)(iii)).
[34] 42 U.S.C. § 1395y(b)(3)(A).
[35] *In re Avandia Marketing, Sales Practices & Prods. Liab. Litig.*, 685 F.3d 353, 359 (3d Cir. 2012).

*The Underlying Accident*

On November 30, 2021, M.W., a Medicare beneficiary, was injured in an automobile accident in Salt Lake City, Utah.[36] A vehicle driven by Defendant and Third-Party Plaintiff Amberly Montanez collided with a vehicle in which M.W. was a passenger.[37] M.W. received treatment for her accident-related injuries in Utah and incurred $32,372.47 in medical treatment expenses.[38] M.W. was enrolled in a Medicare Advantage plan administered by the MAO Humana Medical Plan, Inc. ("Humana").[39] Humana allegedly delegated claims adjudication and payment responsibilities for Medicare beneficiaries to MDX Hawaii ("MDX"), an IPA, at some time allegedly prior to the accident.[40] MDX processed the accident-related claims from M.W.'s healthcare providers and paid them $32,372.47 in allegedly conditional Medicare payments.[41] At the time of payment, MDX allegedly was unaware that Insurers would settle M.W.'s claims or that automobile insurance coverage existed.[42] On May 19, 2025, MDX assigned some of its claims, including M.W.'s, to Alpha.[43]

At the time of the accident, both vehicles involved were registered in Utah and covered under automobile policies.[44] The vehicle in which M.W. was a passenger was insured by Progressive, and Mr. Montanez's vehicle was insured by GEICO.[45] M.W. retained Utah counsel to recover medical expenses and damages from Progressive and GEICO (collectively,

---

[36] Am. Compl. ¶¶ 1–4, 30–31, ECF No. 24, filed Nov. 4, 2025; Pl.'s Consolidated Opp'n to Defs.' Motions to Dismiss ("Opp'n") 4, ECF No. 47, filed Jan. 20, 2026.
[37] Am. Compl. ¶¶ 55–58.
[38] *Id.* ¶¶ 30–31, 69, 73.
[39] *Id.* ¶ 70.
[40] *Id.* ¶¶ 24 n.5, 71–73.
[41] *Id.* ¶¶ 72–73, 95.
[42] *Id.* ¶ 73.
[43] *Id.* ¶¶ 88–95.
[44] *Id.* ¶¶ 59, 62.
[45] *Id.*

"Insurers").[46] She entered into separate settlement agreements with the Insurers and received a combined amount of $75,000 "in satisfaction of her claims."[47] Defendants have not reimbursed Alpha or MDX for the conditional payment of M.W.'s accident-related treatment.[48]

Alpha filed suit to recover double damages ($64,744.94) from the Insurers and no less than ($32,372.47) in subrogation from the Defendants.[49]

## STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to the plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[50] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[51]

However, a "complaint cannot rely on labels or conclusory allegations—a 'formulaic recitation of the elements of a cause of action will not do.'"[52] Instead, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[53] "When analyzing plausibility, plaintiff's allegations are 'read in the context of the entire

---

[46] *Id.* ¶¶ 77–78.
[47] *Id.* ¶¶ 82, 84.
[48] *Id.* ¶ 126.
[49] *Id.* ¶¶ 99, 111, 126.
[50] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (quoting *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019)).
[51] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1131 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (also quoting *Ruiz v. McDonald*, 299 F.3d 1173, 1181 (10th Cir. 2002)) (cleaned up).
[52] *Greer v. Moon*, 83 F.4th 1283, 1292 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 2521 (2024) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).
[53] *Ashcroft* v. *Iqbal,* 556 U.S. 662, 678 (2009).

complaint' and a plaintiff need only 'nudge' their claim 'across the line from conceivable to plausible.'"[54]

Generally, "a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings."[55] This is because the "nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint."[56] "However, notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"[57]

## DISCUSSION

Alpha raises two claims that the Insurers have moved to dismiss.[58] Specifically, Alpha seeks double damages—approximately $64,744.94—against the Insurers under the Medicare Secondary Payer Act ("MSP Act") and, alternatively, subrogation for the $34,372.47 payment MDX made to M.W.'s medical providers.[59]

Defendants argue the court should dismiss Alpha's Amended Complaint in its entirety for lack of personal and subject matter jurisdiction. Defendants also argue Alpha's claims should be

---

[54] *Greer*, 83 F.4th at 1292 (quoting *Chilcoat* v. *San Juan Cnty.,* 41 F.4th 1196, 1218 (10th Cir. 2022)) (also quoting *Twombly*, 550 U.S. at 570) (cleaned up).

[55] *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999)).

[56] *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019). *See also Brody v. Bruner ex rel. Bruner Family Trust*, No. 23-1102, 2024 WL 1912555, at *10 (10th Cir. 2024) (noting that "the purpose of a 12(b)(6) motion to dismiss is to test a complaint's allegations").

[57] *Id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[58] Plaintiff agrees with the Insurers that its third claim, for right-to-charge, "can be dismissed" because "it provides no relief beyond what the First Claim provides." Opp'n 23 n.8. Ms. Montanez moves to dismiss only the subrogation claim—the only claim asserted against her. *See* Montanez Mot. 3.

[59] Am. Compl. ¶¶ 101–126.

dismissed for failure to state a claim upon which relief can be granted. "Absent an assurance that jurisdiction exists, a court may not proceed in a case."[60] "The requirement that jurisdiction be established as a threshold matter is inflexible and without exception."[61] "Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them."[62] Accordingly, the court first addresses the threshold question of whether it has personal and subject matter jurisdiction here before it turns to the MSP Act claim.

## I.      Personal Jurisdiction

Progressive and GEICO argue that their contacts with Utah are insufficient to establish either general or specific jurisdiction in this forum.[63] Alpha acknowledges that Defendants are not subject to general jurisdiction but asserts that they are subject to this court's specific jurisdiction.[64]

A plaintiff bears the burden of establishing jurisdiction "when the court's jurisdiction is contested."[65] "In the early stages of litigation, this burden may be satisfied by making 'a prima facie showing that jurisdiction exists.'"[66]

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the

---

[60] *Chieftain Royalty Co. v. SM Energy Co.*, 100 F.4th 1147, 1161 (10th Cir. 2024) (citing *Cunningham v. BHP Petrol. Gr. Brit. PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005)).

[61] *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (cleaned up).

[62] *Id.*

[63] Progressive Mot. 10–16, GEICO Mot. 8–11.

[64] Opp'n 8.

[65] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[66] *Patriot Sys., Inc. v. C-Cubed Corp.*, 21 F. Supp. 2d 1318, 1320 (D. Utah Sept. 25, 1998) (quoting *Wenz*, 55 F.3d at 1505).

exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[67]

Utah's long-arm statute "is coterminous" with the due process clause.[68] Therefore, the court need

only determine whether the exercise of personal jurisdiction over Defendants satisfies due

process.[69]

### A.    Specific Jurisdiction

Under the due process clause, there are "two types of personal jurisdiction: general and

specific."[70] As mentioned above, Alpha proceeds only on a theory of specific personal

jurisdiction.[71] A court may exercise specific jurisdiction over only those claims that arise out of

or relate to a defendant's contacts with the forum.[72] Thus, specific jurisdiction requires that the

defendant have "minimum contacts" with the forum and that the "maintenance of the suit does

not offend 'traditional notions of fair play and substantial justice.'"[73] Put differently, minimum

contacts exist if "the defendant has purposefully directed its activities at residents of the forum,"

and "the suit arise[s] out of or relate[s] to those activities."[74] The court turns to this two-step

inquiry and then addresses how the exercise of personal jurisdiction fits into "notions of fair play

and substantial justice."[75]

---

[67] *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011) (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010).

[68] *Overstock.com, Inc. v. Furnace Brook, LLC*, 420 F. Supp. 2d 1217, 1219 (D. Utah Oct. 31, 2005); Utah Code Ann. § 78B-3-201(3). *See also Emps. Mut. Cas. Co.*, 618 F.3d at 1159 ("Utah's long-arm statute authorizes jurisdiction to the full extent of the federal constitution.") (cleaned up).

[69] *See ClearOne Commc'ns*, 643 F.3d at 763.

[70] *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1221 (10th Cir. 2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014)).

[71] Opp'n 8.

[72] *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017).

[73] *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1941).

[74] *Hood*, 21 F.4th at 1221 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). *See also DP Creations, LLC v. Adolly.com*, No. 23-4126, 2024 WL 4491924, at *4 (10th Cir. 2024) ("The inquiry into specific jurisdiction over nonresident defendants is, therefore, reduced to a single question: did the defendants have sufficient minimum contacts with the state of Utah to establish personal jurisdiction over them?").

[75] *Int'l Shoe Co.*, 326 U.S. at 316.

### 1.      Purposeful Availment

"Purposeful direction (sometimes referred to as purposeful availment) requires that a defendant have deliberately engaged in significant activities within the forum State or deliberately directed its activities at the forum State."[76] This requirement "ensures that a defendant will not be subject to the laws of a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, the unilateral activity of another party or a third person, or the mere foreseeability that its actions may cause injury in that jurisdiction."[77]

The Tenth Circuit has used "several frameworks for testing whether a defendant has purposefully directed its activities at the forum state."[78] These include "(1) continuing relationships; (2) market exploitation; and (3) harmful effects."[79] Alpha Thirteen invokes the first framework and argues Defendants have "continuing relationships" with Utah because they insure thousands of drivers here, including those involved in the underlying accident; because Progressive maintains a claims office in Utah; and because Defendants made settlement payments to the injured party's Utah attorneys.[80]

Defendants do not challenge that they purposefully availed themselves of conducting activities in Utah but argue, instead, that Alpha's claims do not arise from or relate to their contacts with Utah.

---

[76] *XMission, LC v. PureHealth Research*, 105 F.4th 1300, 1308 (10th Cir. 2024).
[77] *PureHealth Research*, 105 F.4th 1300, 1308–09 (quoting *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017)) (internal quotations omitted).
[78] *Id.* at 1309.
[79] *Old Republic Ins. Co.*, 877 F.3d at 909.
[80] Opp'n 8–9.

### 2.    "Arise Out Of"

"Step two of the minimum contacts test requires us to determine whether the plaintiff's injuries 'arise out of' the defendant's forum-related activities."[81] This step "requires courts to ensure that there is an adequate link between the forum State and the claims at issue, regardless of the extent of a defendant's other activities connected to the forum."[82] The Tenth Circuit has "interpreted the 'arise out of' language to require 'some sort of causal connection between a defendant's contacts and the suit at issue,'" and has "used 'but-for and proximate causation tests'" in this context.[83] In other words, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."[84]

Defendants argue that this prong of the specific-jurisdiction test is not met because this case is not a coverage dispute or a personal injury action related to the underlying automobile accident in Utah. [85] Rather, they assert this is a Medicare reimbursement case involving Ohio- and Maryland-based Defendants who allegedly failed to reimburse MDX Hawaii for alleged conditional payments under the MSP Act to Humana, a Florida entity.[86] Accordingly, the relevant conduct rests not on an automobile accident that occurred in Utah, but on financial transactions not alleged to have been made in Utah.[87]

---

[81] *Old Republic Ins. Co.*, 877 F.3d at 908.
[82] *XMission LC v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020).
[83] *PureHealth Research*, 105 F.4th at 1312–13 (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078). *See also Hood*, 21 F.4th at 1223 (recognizing "the Supreme Court agreed that 'arise out of' is a causal test").
[84] *Bristol-Myers Squibb*, 582 U.S. at 262 (quotation marks and citation omitted).
[85] Progressive Mot. 14; GEICO Mot. 10.
[86] Progressive Mot. 14; GEICO Mot. 10.
[87] GEICO Mot. 3.

For support, Defendants cite a handful of cases where the underlying automobile accident—including its location, treatment, and settlement—were considered irrelevant to a Medicare reimbursement claim.[88] However, as district court cases from a different circuit that analyze jurisdiction under an inapposite long-arm statute, none of the cases are binding or persuasive.[89]

In contrast, Alpha relies on the Supreme Court's articulation of this second step in *Ford Motor Company v. Montana Eighth Judicial District Court*.[90] The court clarified that specific jurisdiction requires that "the suit 'arise out of or relate to the defendant's contacts with the forum.' The first half of [the] standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing."[91] Here, Alpha's claims hinge on insurance policies Defendants provided the Utah residents involved in the underlying automobile accident, which occurred in Utah, and entail settlement payments Defendants made to the Injured who received medical care in Utah and was represented by a

---

[88] GEICO Mot. 10–11; Progressive Mot. 14–16. *See MSP Recovery Claims, Series LLC v. Westfield Ins. Co.*, No. 20-cv-24337, 2021 WL 8343201, at *1 (S.D. Fla. Sept. 27, 2021) (noting that "for the specific jurisdiction inquiry at hand—it is irrelevant where Plaintiffs' assignors are based, or where the accidents related to these claims occurred"); *MSP Recovery Claims, Series 44 LLC v. Great Am. Ins. Co.*, No. 20-cv-24094-CIV, 2021 WL 8343191, at *4 n.4 (S.D. Fla. June 11, 2021) (holding that "a failure to reimburse plainly does not amount to 'carrying on' business or issuing an insurance policy in Florida, and Plaintiff cites no authority to support such a proposition"); .

[89] *Compare Ivanti, Inc. v. Shea*, No. 2:18-cv-92, 2018 WL 1033205, at *2 (D. Utah Feb. 21, 2018) ("Utah's long arm statute supports personal jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."), *with Westfield Ins. Co.*, 2021 WL 8343201, at *3 ("Florida's long-arm statute requires connexity, meaning the cause of action must arise from one of the enumerated acts in the statute.") (cleaned up). Defendants also rely on *Alpha Thirteen, LLC v. Progressive Cas. Ins. Co.*, No. 25-cv-00364, 2025 WL 3470852 (D. Haw. Dec. 3, 2025) in which the district court found no personal jurisdiction in a similar lawsuit involving at least some of the parties in this case. However, the Hawaii case notably differs from here because the complaint contained only one allegation of the defendants' business in the forum— "that Defendants conducted unspecified business here"—and that fact was dispositive in the court's decision to dismiss the case for lack of personal jurisdiction. *See id.* at *1.

[90] *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 592 U.S. 351 (2021).

[91] *Id.* at 362.

Utah attorney.[92] Granted, the claims themselves are for reimbursement of conditional payments made under the MSP Act. Yet the reimbursement is part of the same causal chain as the automobile accident. Thus, Progressive and GEICO's contacts with Utah are sufficiently related to Alpha's claims to satisfy due process.

### 3. Fair Play and Substantial Justice

Having determined that Alpha met its burden of a making a prima facie showing of specific personal jurisdiction over Progressive and GEICO, the court "must still inquire whether the exercise of personal jurisdiction would 'offend traditional notions of fair play and substantial justice.'"[93] With minimum contacts established, "it is incumbent on defendants 'to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"[94] Courts consider the following factors:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.[95]

Defendants fail to address any of these factors or discuss generally why the exercise of jurisdiction in Utah would not comport with fair play and substantial justice. Consequently, Defendants have not met their burden to make a "compelling case" that the exercise of jurisdiction would be unreasonable.[96]

---

[92] Opp'n 8–9.

[93] *Dudnikov*, 514 F.3d at 1080 (quoting *Int'l Shoe*, 326 U.S. at 316).

[94] *Id.* (quoting *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005)).

[95] *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020).

[96] *See Dudnikov*, 514 F.3d at 1080.

In sum, Alpha's allegations demonstrate that Progressive and GEICO have purposefully directed their conduct at Utah and that there is a sufficient nexus between that conduct and the alleged injury. Therefore, Alpha has made a prima facie showing of specific personal jurisdiction over Progressive and GEICO. Defendants, however, have not made a compelling case that asserting personal jurisdiction would be unreasonable. Accordingly, personal jurisdiction is proper at this stage of the case.

## II.    Subject Matter Jurisdiction

Next, the court addresses Defendants' challenge to its subject matter jurisdiction. "Subject matter jurisdiction defines the court's authority to hear a given type of case" and "represents the extent to which a court can rule on the conduct of persons or status of things."[97] Defendants challenge this court's subject matter jurisdiction on the grounds that Alpha lacks standing.[98]

"Standing is a prerequisite to a federal court's subject matter jurisdiction."[99] "To demonstrate standing, a plaintiff must show an injury in fact, causation, and redressability."[100] The injury "must be concrete and particularized, and not hypothetical."[101] Here, Defendants argue Alpha has not shown injury or causation because its Amended Complaint failed to trace each alleged assignor's injuries to a specific Defendant's conduct and show that the assignors validly assigned their rights to Alpha.[102] In response, Alpha filed the assignment of claims from

---

[97] *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1092–93 (10th Cir. 2017) (internal quotation marks and citations omitted).
[98] Progressive Mot. 16–21; GEICO Mot. 11–16.
[99] *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1077 (10th Cir. 2025).
[100] *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). *See also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (stating that plaintiffs "carry the burden of establishing their standing under Article III").
[101] *Id.* (citing *New England Health Care Emps. Pension Fund v. Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008)).
[102] GEICO Mot. 10–13; Progressive Mot. 16–21.

MDX to Alpha with its Opposition and argued that Humana's assignment to MDX is irrelevant because Alpha's claims "are not claims on MDX Hawaii's contract with Humana."[103]

Generally, "a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings."[104] However, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[105] Defendants argue this exception does not apply because the assignment at the center of Alpha's claim is the one between Humana and MDX, not between MDX and Alpha.[106]

In the Medicare reimbursement context, "[c]ourts across the country . . . have held that the assigning MAO's identity is a necessary component to establish standing."[107] Additionally, "federal courts commonly hold that plaintiffs cannot plead a valid assignment without advancing some factual allegations connecting the injury of at least one assignor MAO to at least one defendant."[108]

Here, Alpha fails to trace its injury back to Humana, the alleged MAO. Its factual allegations regarding the connection between Humana (the alleged assignor MAO) and the Defendants amount to the following: "Prior to the Accident, MDX Hawaii (an Independent Physician Association) assumed Humana's claims adjudication and payment responsibilities for the members of certain Medicare Advantage plans in Hawaii. MDX Hawaii's assumption of

---

[103] Opp'n 15–16; Ex. 2, ECF No. 49-2, filed Jan. 20, 2026.
[104] *Alvarado*, 493 F.3d at 1215 (quoting *Prager*, 180 F.3d at 1188).
[105] *Id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).
[106] GEICO Mot. 10–13; Progressive Mot. 16–21.
[107] *Series 15-09-321 v. Progressive Corp.*, 1:23-cv-02015, 2025 WL 1827815, at *4 (N.D. Ohio July 2, 2025) (collecting cases).
[108] *Id.* at *5 (collecting cases).

responsibility included the financial obligation to bear the cost for M.W.'s medical claims."[109] Without some factual enhancement, this assertion—that MDX Hawaii assumed certain responsibilities from Humana—is a legal conclusion. Alpha says nothing about the vehicle for the assumption of responsibilities, including whether it occurred by contract, operation of law, or some other alleged method. Additionally, while Alpha need not supply evidence at this stage, the only assignment Alpha has produced includes no mention of Humana, and without a valid assignment of some kind between Humana and MDX, Alpha has not established the required linkage and consequently lacks standing. In short, while detailed facts are not required, some facts are. To adequately plead standing, something more is needed than the bare conclusion that MDX in some unidentified way assumed Humana's responsibilities. Therefore, the Complaint fails to establish the court's subject matter jurisdiction over the claims, and the court dismisses them without prejudice.

### ORDER

Accordingly, Defendants' motions to dismiss are granted.[110] An amended complaint, if Alpha chooses to file one, is due no later than thirty (30) days from the date of this order.

Signed May 26, 2026.

BY THE COURT

_____
David Barlow
United States District Judge

---

[109] Am. Compl. ¶ 71.
[110] ECF Nos. 35, 43, & 44.